UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ROSALIND A. CLAYTON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:23-cv-01186-SRC |
| | ) |
| UNITED STATES POSTAL SERVICE | ) |
| & AMERICAN POSTAL WORKERS | ) |
| UNION, | ) |
| | ) |
| Defendants. | |

**Memorandum and Order**

Self-represented Plaintiff Rosalind Clayton works for the United States Postal Service. Over the last couple of years, she's had several negative interactions with her coworkers, supervisors, and union. Believing the Postal Service and the union have ignored her numerous complaints, discriminated against her, and violated other rights, she sued both. Now, the defendants move to dismiss under multiple provisions of Federal Rule of Civil Procedure 12(b).

**I.   Background**

**A.   Complaint**

Clayton alleges the following well-pleaded facts. Rosalind Clayton describes herself as "60[-]years old, black, Christian, [and a] woman." Doc. 1-1 at 1. She works for the Postal Service and is "a member in good standing with the American Postal Workers Union." *Id*. In 2022 and 2023, she experienced several disagreements with coworkers, supervisors, and union representatives, which resulted in Clayton's filing both Equal Employment Opportunity complaints—i.e., complaints filed with the Postal Service's EEO office—and union grievances. *See generally* doc. 1-1.

The Court presents the disputes chronologically. In July 2022, Mercedes Spain, Clayton's coworker, "cursed [her] out," saying, "Rosalind[,] don't say [a] M.F. thing to me any time you say anything to me I am going to curse u [sic] out." *Id.* at 8. After, a supervisor and union steward individually interviewed another employee about the interaction but neither interviewed Clayton. *Id.*; *see id.* at 4. About a week later, Clayton filed an EEO complaint for this incident. *Id.*; *see* doc. 1-15. And two days later, Clayton filed a second EEO complaint. Doc. 1-1 at 8; *see* doc. 1-16. Then in August 2022, an EEO ADR specialist sent Clayton a letter, providing her with the necessary information for filing a formal complaint. Doc. 1-1 at 9; doc. 1-17.

In September 2022, Spain again "cursed out" Clayton, stating: "look at that wig"; "B**ch yo old a** in here throwing mail"; "you're miserable"; "You are a hypocrite singing church songs"; and "I don't like you or your husband." Doc. 1-1 at 9. Clayton then spoke with a supervisor, but the supervisor failed to interview her. *Id.* A few days later, another coworker, Ronald Cameron, charged and yelled at Clayton, saying, "what! what! what!" and "your old a** is the one who is stealing time." *Id.* at 9–10. Clayton reported this incident to three supervisors. *Id.* at 10. Near the end of September, Clayton filed two separate union grievances, complaining about the behavior of Spain and Cameron. *Id.* at 9–10; *see* docs. 1-5, 1-6.

Also in September 2022, the Postal Service issued a schedule-change letter, instructing Clayton to report at 9:00 p.m.—changing her "regular" hours of 7:00 p.m.–3:30 a.m. Doc. 1-1 at 10, 12; *see* doc. 1-7. Opposed to the change, Clayton called a manager three times with no answer, and the manager never returned her calls. Doc. 1-1 at 10. Then a day after receiving the letter, Clayton filed a union grievance, complaining that the "sudden schedule change eliminated [her] Sunday premium wages." *Id.* at 11; *see* doc. 1-8.

2

Proceeding into October, Cameron's behavior persisted. He "chanted for more than 60 days": "you so ugly, I am about to throw up"; "you old"; "you broke"; "your son broke"; and "God has been good to you but he show [sic] aint [sic] done a damn thing for your son." Doc. 1-1 at 10–11. Because of this, Clayton complained to a supervisor. *Id.* at 11. The next day, Clayton attended a meeting with Cameron, the supervisor, and a union steward, at which the supervisor said, "I don't know what's going on, but I want it to stop." *Id.* But Cameron didn't stop. *Id.*

In mid-October, the Postal Service issued a second schedule-change letter, but it contained the same date as the first. *Id.*; *see* doc. 1-9. The schedule change required Clayton to clock-in at the same time as Cameron. Doc. 1-1 at 11. Almost two weeks later, Clayton filed a union grievance, complaining of the "fraudulent letter." *Id.* at 12; doc. 1-13. And shortly after that, Clayton filed an EEO complaint. Doc. 1-1 at 12; *see* doc. 1-18.

When Clayton refused to clock in at 9:00 p.m., the Postal Service issued her a "PDI" (pre-disciplinary interview). Doc. 1-1 at 12. Then in mid-November, management told Clayton her schedule would not change and instructed her not to work any overtime. *Id.* at 12. Clayton continued to work her "regular" hours (7:00 p.m.–3:30 a.m.). *Id.* Following this, three paychecks in October and November 2022 differed from the hours Clayton actually worked. *Id.* at 13; *see* docs. 1-21, 1-22, 1-23. And because of these discrepancies, Clayton filed three union grievances in November and December 2022. Doc. 1-1 at 14; *see* doc. 1-10 at 2–7.

Near the end of 2022, a supervisor sent Clayton two letters regarding her work schedule: (1) for a pre-disciplinary interview and (2) as a disciplinary warning. Doc. 1-1 at 14; doc. 1-11. In response, Clayton filed a union grievance, complaining of the "fraudulent letter of warning" and "fraudulent absence." Doc. 1-1 at 14; doc. 1-12. Clayton also filed an EEO complaint

3

regarding her schedule and wages.  Doc. 1-1 at 15; *see* doc. 1-19.

On December 30, 2022, Clayton and Spain got into another dispute.  Doc. 1-1 at 15. While Clayton looked at Spain, Spain asked her what she was looking at.  *Id.*  Clayton responded, "you."  *Id.*  And when Spain asked "is that all you have to say?" Clayton replied, "God granted me the gift of sight[.]  I should be able to look at whatever I choose."  *Id.*  After this interaction, Clayton verbally complained to two supervisors.  *Id.*

The dispute continued the next day.  When Clayton arrived at work, Spain approached her and, while chest-to-chest, asked Clayton, "what was all that sh*t you were talking?"  *Id.*  Clayton denied "talking sh*t."  *Id.*  Spain then walked off, bumped Clayton's shoulder, and told Clayton, "swing."  *Id.*  Soon after, Clayton called a union representative and said Spain "physically [and] verbally assaulted" her.  *Id.*; *see id.* at 2.  Then Clayton told a supervisor.  *Id*. at 15.  Further, Clayton filed a union grievance the following day, but the union cannot find it and failed to process it.  *Id.*; *see* doc. 1-3.

On January 2, 2023, Clayton finished work in the morning and did not return until January 5.  Doc. 1-1 at 16.  During this time, Spain accused Clayton, without Clayton knowing, of pulling a knife on her and threatening her.  *Id.* at 2.  So when Clayton returned to work, Postal Police searched her, but they did not find a knife.  *Id.* at 16.  Because of this incident, the Postal Service suspended both Clayton and Spain—Clayton for 23 days and Spain for 3 days.  *Id.* at 1.  A supervisor told Clayton she "was suspended 'indefinitely' pending an investigation for 'ongoing issues.'"  *Id.* at 2.  Clayton's collective-bargaining agreement with the Postal Service establishes procedures for suspension or removal, requiring a manager to review and concur with a suspension before an employee's suspension.  *Id.* at 3.  But the Postal Service did not conduct this review and concurrence until after Clayton's suspension began.  *Id.*

4

Clayton filed another EEO complaint a day after the suspension. *Id.* at 16; *see* doc. 1-20. And about a week later, she received a letter of suspension, which stated, "On January 02,[]2023 an[] incident report was filed with the US Postal Police claiming you had physically and verbally harassed another employee." *Id.* at 2; doc. 1-2. The Postal Service did not provide Clayton with a copy of the police report, and it did not interview her during the investigation. Doc. 1-1 at 2–3.

Also during January 2023, the union issued Clayton a settlement for a prior grievance. *Id.* at 18; *see also* doc. 1-14 at 3. Clayton neither understood nor consented to the settlement. Doc. 1-1 at 18. Additionally, the union told Clayton that it would get her paid for one-and-a-half days she was suspended. *Id.* But, as of filing her complaint, Clayton has not received a reimbursement. *Id.*

When Clayton returned to work in February, she attended a meeting with a supervisor and told him that nothing happened on January 2. *Id.* at 6. Further, she asked a union representative why she was suspended for 23 days, and the representative told her that Spain accused her of pulling a knife and threatening Spain. *Id.* at 2. Finally, in August 2023, the union settled two grievances—again without Clayton's consent. *Id.* at 14; *see* doc. 1-14 at 1–2.

**B. Procedural history**

On September 20, 2023, Clayton filed a 14-count complaint against the Postal Service and the union:  (1) Fourteenth Amendment violation; (2) Title VII violation; (3) 42 U.S.C. § 1981 violation; (4) Title VII violation; (5) ADEA violation; (6) ADEA violation; (7) harassment; (8) disparate treatment; (9) recordkeeping violation; (10) retaliation; (11) Equal Pay Act violation; (12) 29 U.S.C. § 206 violation; (13) 29 U.S.C. § 207 violation; and (14) libel. Doc. 1; doc. 1-1. In doing so, she cited to multiple authorities:

> Title VII of [t]he Civil Rights Act of 1964, 42 U.S.C. 2000e-2(a) - et seq., [t]he Age Discrimination in Employment Act of 1967 (ADEA)[,] 29 U.S.C. 621 - et seq.,

5

Harassment, Retaliation[,] 42 U.S.C. 2000e-3(a), 29 U.S.C. 623(d), 29 U.S.C. 215(a)(3), Equal Pay Act of 1963 (EPA)[,] 29 U.S.C. 206(d), 29 U. S. C. [sic] 158(a), ADEA Disparate Treatment[,] 42 U.S.C. 1981[,] Equal Rights, Religion, Libel[,] 28 U.S.C. 4101(1), Fourteenth Amendment, 29 U.S.C. 201et. [sic] seq.

Doc. 1-1 at 1. About four months later, Clayton amended her cited authorities, changing "29 U.S.C. 158(a)" to "Section 301[,] 29 U.S.C. 185(a)." Doc. 38. The amendment added a Labor Management Relations Act claim against the Postal Service. *See* doc. 51 at 1.

Clayton seeks damages for unpaid wages, a delinquent mortgage loan, backpay, emotional and mental distress, loss of sleep, and loss of enjoyment of life. Doc. 1-1 at 18. Additionally, she seeks $1 million for each of her 14 counts and punitive damages of $3 million. *Id.* Overall, she seeks about $17.6 million. *Id.*

Both the Postal Service and the union filed motions to dismiss. Docs. 15, 22, 47, 51. The Postal Service moves to dismiss all Clayton's claims. Docs. 22, 51. And the union moves to partially dismiss Clayton's claims. Docs. 15, 47. The Court addresses the motions below.

**II.     Standard**

Federal Rule of Civil Procedure 12(b) allows a defendant to assert various defenses by motion: "(1) lack of subject-matter jurisdiction; (2) lack of personal jurisdiction; (3) improper venue; (4) insufficient process; (5) insufficient service of process; (6) failure to state a claim upon which relief can be granted; and (7) failure to join a party under Rule 19." As discussed below, some of these defenses result in dismissal of various claims.

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a claim for "failure to state a claim upon which relief can be granted." The notice pleading standard of Rule 8(a)(2) requires a plaintiff to give "a short and plain statement . . . showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To meet this standard and to survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as

6

true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This requirement of facial plausibility means the factual content of the plaintiff's allegations must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1128 (8th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678). The Court must grant all reasonable inferences in favor of the nonmoving party. *Lustgraaf v. Behrens*, 619 F.3d 867, 872–73 (8th Cir. 2010). Ordinarily, the Court considers only the facts alleged in the complaint when ruling on a motion to dismiss; however, materials attached to the complaint may also be considered in construing its sufficiency. *Reynolds v. Dormire*, 636 F.3d 976, 979 (8th Cir. 2011).

When ruling on a motion to dismiss, a court "must liberally construe a complaint in favor of the plaintiff." *Huggins v. FedEx Ground Package Sys., Inc.*, 592 F.3d 853, 862 (8th Cir. 2010). However, if a claim fails to allege one of the elements necessary to recover on a legal theory, the Court must dismiss that claim for failure to state a claim upon which relief can be granted. *Crest Constr. II, Inc. v. Doe*, 660 F.3d 346, 355 (8th Cir. 2011). Threadbare recitals of a cause of action, supported by mere conclusory statements, do not suffice. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Rule 8 does not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678–79. "A pleading that merely pleads 'labels and conclusions,' or a 'formulaic recitation' of the elements of a cause of action, or 'naked assertions' devoid of factual enhancement will not suffice." *Hamilton v. Palm*, 621 F.3d 816, 817 (8th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678). Although courts must accept all factual allegations as true, they are not bound to take as true a legal conclusion couched as a factual allegation. *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 677–78.

Only a complaint that states a plausible claim for relief survives a motion to dismiss. *Iqbal*, 556 U.S. at 679. Therefore, the Court must determine if the well-pleaded factual allegations "plausibly give rise to an entitlement to relief." *Id*. This "context-specific task" requires the Court to "draw on its judicial experience and common sense." *Id*. In determining the plausibility of a plaintiff's claim, *Iqbal* and *Twombly* instruct the Court to consider whether "obvious alternative explanations" exist for the allegedly unconstitutional conduct. *Id.* at 682; *Twombly*, 550 U.S. at 567. The Court must then determine whether the plaintiff plausibly alleges a violation of the law. *Iqbal*, 556 U.S. at 682. The well-pleaded facts must permit more than the "mere possibility of misconduct." *Id.* at 679. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id*. at 678 (quoting *Twombly*, 550 U.S. at 557).

The Court liberally construes complaints filed by laypeople. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). "Liberal construction" means that "if the essence of an allegation is discernible," the Court should "construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)).

**III.    Discussion**

    **A.    The Postal Service's motion to dismiss**

The Postal Service first asks the Court to dismiss all claims for improper service. Doc. 27 at 1. Federal Rule of Civil Procedure 4 dictates how a party serves the United States and an agency, such as the Postal Service:

> (1) *United States.* To serve the United States, a party must:
>
> > (A)(i) deliver a copy of the summons and of the complaint to the United States attorney for the district where the action is brought—or to an assistant

8

>> United States attorney or clerical employee whom the United States attorney designates in a writing filed with the court clerk—or
>
>> (ii) send a copy of each by registered or certified mail to the civil-process clerk at the United States attorney's office [and]
>
> (B) send a copy of each by registered or certified mail to the Attorney General of the United States at Washington, D.C. . . .
>
> (2) *Agency; Corporation; Officer or Employee Sued in an Official Capacity.* To serve a United States agency or corporation, or a United States officer or employee sued only in an official capacity, a party must serve the United States and also send a copy of the summons and of the complaint by registered or certified mail to the agency, corporation, officer, or employee.

Fed. R. Civ. P. 4(i)(1)–(2).

The Court agrees that Clayton failed to properly serve the Postal Service. Clayton attempted service on the Postal Service by (1) having a process server deliver a copy of the complaint and summons to the Postal Service and (2) mailing, via certified mail, a copy of the complaint to "the Attorney General and the U.S. Attorney General and United States Postal Police." Doc. 48 at 7; doc. 48-1 at 5–7. By failing to deliver a copy of the summons, Clayton failed to properly serve the United States. *See* Fed. R. Civ. P. 4(i)(1). Thus, she failed to properly serve the Postal Service.

But the Court disagrees that Clayton's improper service must result in dismissal. "[W]hile a district court may, and indeed should at times, dismiss a cause for want of jurisdiction ascribed to defective service on the United States, or its agency, the district court is not without rather broad discretion in determining the propriety of dismissal . . . ." *C & L Farms, Inc. v. Fed. Crop Ins. Corp.*, 771 F.2d 407, 409 (8th Cir. 1985) (per curiam); *see also Haley v. Simmons*, 529 F.2d 78, 79 (8th Cir. 1976) (per curiam) ("[D]ismissal [is not] invariably required where service is ineffective: under such circumstances, the [district] court has discretion to either dismiss the action, or quash service but retain the case." (citations omitted)).

9

Often, courts will only dismiss "when the defect is prejudicial to the defendant . . . . Otherwise the court will allow an amendment of the process to correct the defect."  5B Alan Wright, Arthur R. Miller & Benjamin Spencer, *Federal Practice and Procedure* § 1353 (4th ed. 2024) (citations omitted).  Here, the Postal Service alleges no prejudice.  *See* doc. 27 at 12–16.  And considering Clayton's mailing of the complaint to the United States Attorney General and an Assistant United States Attorney's appearance in this case, the Court finds the prejudice—if any—minimal.  Further, considering these facts and Clayton's pro se status, the Court declines to dismiss Clayton's complaint for improper service.  Rather, the Court provides Clayton another chance to properly serve the Postal Service.  By no later than June 14, 2024, Clayton must properly serve the Postal Service and the United States.  If she fails to do so, the Court will dismiss her claims against the Postal Service.  Additionally, because the Court gives Clayton another chance to properly serve the Postal Service, the Court denies the Postal Service's motions to dismiss, docs. 21, 51, on the remaining grounds, as moot.

**B.       The union's motion to dismiss**

On her employment-discrimination complaint form, Clayton lists both the Postal Service and the union as defendants and seemingly alleges that both discriminated against her.  Doc. 1.  But in her attached complaint, Clayton does not explicitly connect her various counts to the union. *See generally* doc. 1-1.  When mentioning the union, Clayton alleges it discriminated against her and failed to properly handle her grievances. *See, e.g.*, *id.* at 16 ("The union discriminated against me when it failed to process 1-1-23 grievance."); *see also id.* at 4, 7, 14–16, 18.  Therefore, the Court construes Clayton's complaint as alleging two types of claims against the union:  (1) discrimination and (2) implied duty of fair representation.  The union moves to dismiss the discrimination claims and partially dismiss the implied-duty-of-fair-

10

representation claims. Doc. 15-1.

### i. Discrimination claims

Clayton alleges the union discriminated against her. Doc. 1-1 at 16. The union argues that the Court should dismiss these claims because Clayton failed to file a charge of discrimination against the union and because Clayton failed to allege facts demonstrating discrimination. Doc. 15-1 at 3. The union fails to provide relevant authority for the first argument, so the Court addresses only the second.

The Court agrees that Clayton failed to allege facts demonstrating discrimination. In two instances, Clayton accuses the union of discrimination, but she fails to allege any facts connected with the discrimination. First, she alleges the union discriminated against her when it failed to process a grievance:

> [The union] failed to process said grievance. [The union] has not been able to locate said grievance. [The union] failed to provide me with fair effective union representation. violated [sic] the CBA. I filed grievance & complaint prior to Spain filed [sic] Postal Police. The [U]nion discriminated against me when it failed to process 1-1-23 grievance.

Doc. 1-1 at 15–16. Here, Clayton fails to identify the discrimination and fails to allege facts supporting the claim; she merely alleges the union failed to take action. Thus, this claim amounts to a conclusory statement, which does not suffice. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.

Second, after complaining about a union settlement letter, Clayton alleges that the union "repeatedly deprived older, black[] woman equal protection of the law." Doc. 1-1 at 18. She provides no further explanation and, again, fails to allege any facts supporting the claim. This too amounts to a conclusory statement, which does not suffice. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Thus, the Court dismisses Clayton's discrimination claims against

11

the union.

### ii. Implied-duty-of-fair-representation claims

Clayton alleges the union failed to effectively represent her. *See, e.g.*, doc. 1-1 at 15. Construing the allegations as implied-duty-of-fair-representation claims, the union argues that the Court should dismiss some of her claims as untimely. Doc. 15-1 at 5.

The National Labor Relations Act deems unions the "exclusive" bargaining representatives when they are "designated or selected for the purposes of collective bargaining by the majority of employees." 29 U.S.C. § 159(a). Based on this, the Supreme Court has found that the Act implicitly imposes on the union a "duty of fair representation." *Int'l Bhd. of Elec. Workers v. Foust*, 442 U.S. 42, 47 n.8 (1979) (citations omitted); *see also Markham v. Wertin*, 861 F.3d 748, 758 (8th Cir. 2017) ("When a labor organization has been selected as the exclusive representative of the employees in a bargaining unit, it has a duty, implied from its status under § 9(a) of the NLRA as the exclusive representative of the employees in the unit, to represent all members fairly." (quoting *Marquez v. Screen Actors Guild, Inc.*, 525 U.S. 33, 44 (1998))). "A breach of the duty of fair representation occurs when 'a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith.'" *Markham*, 861 F.3d at 758 (quoting *Vaca v. Sipes*, 386 U.S. 171, 190 (1967)).

For a duty-of-fair-representation claim, a plaintiff has six months to file suit. *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 172 (1983). "Courts have generally held that the six-month limitations period begins to run when the employee knows or reasonably should know that the union has breached its duty of fair representation." *Becker v. Int'l Bhd. of Teamsters Loc. 120*, 742 F.3d 330, 333 (8th Cir. 2014) (quoting *Skyberg v. United Food & Com. Workers Int'l Union*, 5 F.3d 297, 301 (8th Cir. 1993)).

Clayton filed suit on September 20, 2023. *See* doc. 1. Applying the framework above, breaches Clayton knew, or reasonably should have known of, from before March 20, 2023, are time-barred. Clayton complains of three union settlements, but one complaint is time-barred. The union issued the first on January 19, 2023: "Darren Pruitt issued me a settlement grievance letter . . . . The letter is heavily coded, I'm unable to understand the settlement, I didn't consent to settlement." Doc. 1-1 at 18; *see also* doc. 1-14 at 3. The union issued the second and third on August 9, 2023: "Gene Hollenbeck[,] union representative[,] settled 2 grievances . . . . Hollenbeck settled grievances without my consent, deprived negro[] woman of a choice." Doc. 1-1 at 14; *see also* doc. 1-14 at 1–2.

Clayton may not bring a claim relating to the union's January 2023 settlement. *See* doc. 1-1 at 18. When the union settled the grievance, Clayton knew, or reasonably should have known, that the union allegedly breached its duty of fair representation. Thus, she needed to bring a claim by July 2023. Further, Clayton may bring claims relating to the union's August 2023 settlements. *See* doc. 1-1 at 14. Accordingly, the Court dismisses, with prejudice, Clayton's duty-of-fair representation claim for the January 2023 settlement.

**C.     Outstanding motions**

After Defendants filed their motions to dismiss, Clayton filed multiple motions. In response to the Defendants' motions to dismiss and subsequent replies, Clayton filed five documents labeled as pro se motions in opposition. Docs. 49–50, 54–55, 57. More properly understood, these documents are responses or surreplies to Defendants' motion-to-dismiss filings. Therefore, the Court denies these motions as moot.

Further, Clayton filed a "Motion for Entry of Default Judgment," doc. 28, and a corresponding motion for damages, doc. 30. Clayton based her default-judgment motion on the

13

union's alleged failure to timely file an answer. Doc. 28 at 1. But before Clayton filed her motion, the Court granted the union leave to file out of time and accepted the union's answer. Doc. 25. Thus, Clayton lacked grounds to file a default-judgment motion, and the Court denies Clayton's default-judgment motion and damages motion as moot.

**IV.     Conclusion**

Accordingly, the Court orders Clayton to properly serve the Postal Service with summons and a file-stamped copy of her complaint no later than June 14, 2024. Clayton's failure to do so will result in the Court dismissing her action against the Postal Service. Further, the Court dismisses the Postal Service's [22] [51] motions to dismiss as moot. Additionally, the Court grants the union's [15] [47] motions to dismiss. Finally, the Court denies Clayton's [28] [30] [49] [50] [54] [55] [57] motions as moot.

So ordered this 15th day of May 2024.

_____SL R. CR_____
STEPHEN R. CLARK
CHIEF UNITED STATES DISTRICT JUDGE

14